UNITED STATES DISTRICT COURT
Western District of Michigan

FILED- LN
October 1, 2024 3:09 PM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: eod  scanned by:

**CAROL WALTON,**

    Plaintiff

-v-

**TEG, Somerset Park, LLC**

    Defendant

_____/

Civil Action No. 1:24-cv-1031

Hon. Paul L. Maloney
US District Judge

Carol Walton in Pro Se
14705 Abbey Ln., Apt A1
Bath, MI 48808

TEG, Somerset Park, LLC
c/o Aaron D. Cox, P69346
23820 Eureka
Taylor, MI 48180

517-449-4587

734-287-3664

_____/

## COMPLAINT

NOW COMES PLAINTIFF, CAROL WALTON IN PRO SE in this matter and alleges the following:

### NATURE OF THE ACTION

1. The Plaintiff brings this action to enforce the provisions of Title VIII of the Civil Rights Act of 1968 ("Fair Housing Act" or the "Act"), as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601 to 3619. The Plaintiff brings this action on behalf of herself, pursuant to Section 812(0) of the Fair Housing Act, 42 U.S.C. § 3612(0).

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. § 3612(O).

3. Venue is proper under 28 U.S.C. § 1391 because the events or omissions giving rise to the claims occurred in the Western District of Michigan, the subject property is located in this District, and the Defendants do business in this District.

4. Defendant TEG, Somerset Park is an active corporation doing business in Michigan, with its principal address at 14690 Abbey Lane, Bath, MI 48808. At all times relevant to the complaint, TEG, Somerset Park managed the Subject Property. TEG, Somerset Park's responsibilities included, among other things, renewing leases, communicating with tenants, collecting rent, and arranging for maintenance of the Subject Property.

5. The apartments at the Subject Property are "dwellings" as defined by the Fair Housing Act, 42 U.S.C. § 3602(b).

## FACTUAL ALLEGATIONS

### A. Reasonable Modification Request for Shower and Commode Area Grab/Safety Bars

6. During the initial walk-through Plaintiff asked if she could add grab bars to her shower and toilet area as they were not a part of the unit.

7. During the walkthrough, Plaintiff was told "No, you cannot modify your unit, but we can make the modifications you need." The Plaintiff was also told that her lease does prohibit tenants from modifying their units. The "LEASE" provided by the Defendant in

Paragraph 26. Condition of the premises and alterations, specifically states in part, the following **(EXHIBIT H)**:

> "...*Unless authorized by us in writing, you must not perform any repairs, painting, wallpapering, carpeting, electrical changes, or otherwise alter our property...*"

8. Plaintiff moved into the Subject Property on September 20, 2023. Plaintiff's lease began on September 20, 2023, and runs through November 19, 2024. Plaintiff lives at the Subject Property with her son, who is also her caregiver.

9. Plaintiff is a person with a disability. Plaintiff suffers from pelvic sacroiliac diastasis, traumatic rupture of the symphysis pubis, osteochondroma right hip, bilateral edema of the lower extremity, right lumbosacral radiculopathy, gait instability, impaired mobility and ADLs, gait abnormality, ischial bursitis of the right side, managed pain, depression, anxiety, vertigo, and limited movement of her left leg. At all times relevant to this complaint, Plaintiff had a mobility impairment and relied on a mobility device due to pelvic sacroiliac diastasis, traumatic rupture of the symphysis pubis, osteochondroma right hip, bilateral edema of the lower extremity, right lumbosacral radiculopathy, gait instability, impaired mobility and ADLs, gait abnormality, ischial bursitis of the right side, managed pain, and limited movement of her left leg. Although Defendant was aware Plaintiff was disabled, Defendant was not made aware of the specific ailments that caused Plaintiff's disability, nor is Plaintiff required to disclose her medical condition.

10. Shortly after Plaintiff moved in, on or about September 25, 2023, Plaintiff submitted a Reasonable Accommodation/Modification Request as part of the "special provisions" section of her Inventory and Conditions Form dated September 26, 2023. The request stated that the Plaintiff is disabled and requested grab bars for the bathroom, in

the shower and around the toilet. The plaintiff also requested that the entry door be modified with a floor transition threshold ramp so her wheelchair could get in and out of the unit. Plaintiff did not ask that Defendant pay for the cost of the safety bars or threshold ramp.

11. On September 27, 2023, Defendant was made aware that tenant/Plaintiff, Carol Walton, was disabled and requested a ramp at the door for entry, and grab/safety bars in the shower and near the commode through the tenant portal (EXHIBIT A). Maintenance placed something at the front door so the wheelchair can get in and out of the unit, but it is not sufficient to the point where Plaintiff can get in and out without assistance. Maintenance did state, back in September of 2023, that it would take a while to find a contractor to install the safety/grab bars. PLAINTIFF selected this apartment complex because it was advertised as "ACCOMMODATIONS Disability Access" (EXHIBIT G).

12. Tenant Portal does not have an option specifically for safety bars, or an entry door threshold ramp, that request had to be typed in the comments. The Portal does not keep the comments where they can be accessed by tenants (EXHIBIT I).

13. On September 29, 2023, a member of the Defendant's maintenance staff fixed the clog in Plaintiff's bathroom sink. When finished and in the presence of Plaintiff's son (Darian Walton), Plaintiff, Plaintiff's son, and the maintenance man discussed the entry door threshold ramp, and the safety/grab bars for the shower and near the toilet. During the discussion, the maintenance man discussed how he understood Plaintiff's needs as his father built a ramp for his home, added safety bars and other handicap-accessible features due to being disabled, including getting a house with no stairs.

14. On or about September 29, 2023, the maintenance man provided Plaintiff with a device that could be used around the toilet as a temporary fix until safety/grab bars

could be installed. This device could not be used as it was unstable and left no room for Plaintiff to get in and out of her shower. The proximity of the shower and commode is very close and was too close for that device to be used.

15. To date, Plaintiff has no safety bars, and getting into, and out of the shower is unsafe for her eventually, on Friday, June 21, 2024, Plaintiff fell in the shower, injured herself, and ended up back in the hospital. The fall exacerbated and inflamed her sacroiliitis and the injury in her pubic-rambus leaving her in excruciating pain in her hip, buttocks, and lower back, and unable to stand, turn, or pivot. It also ruptured her symphysis rambus.

16. Plaintiff could not get up to use the restroom and had to relieve herself into a bucket on the floor beside her bed. The plaintiff also missed her dialysis session for that day because the injury left her unable to get into her vehicle. The next day, Plaintiff called 911 and went to the hospital where she was admitted, given an x-ray, MRI, and Cat Scan to confirm her injuries and receive dialysis treatments (EXHIBIT D).

17. Plaintiff did file another maintenance request on June 22, 2024 (EXHIBIT B).

18. Plaintiff filed an accident report on June 26, 2024, with the Defendant and again requested safety bars and still nothing was modified (EXHIBIT E).

19. Plaintiff filed another reasonable accommodation request on June 30, 2024 (EXHIBIT C).

20. Defendant reached out to Plaintiff, by phone, on July 2, 2024, and said they are looking for a contractor to install the bars. As someone who had to make her house handicap-friendly, Plaintiff knows it doesn't take 10 months to find a contractor. Defendant is violating Plaintiff's ADA reasonable accommodation rights under the Federal Housing

Act, and rights to a safe inhabitable living space. Right now, Plaintiff continues to wash up at the sink because emotionally and mentally, Plaintiff is distraught and fears falling in the shower again unable to grab a safety bar to stop herself from falling. Plaintiff also experiences excruciating pain when trying to get into the shower holding onto the shower doors and shower wall trying to lift the injured leg up and into the shower. Holding on to the wet shower doors and wall to get out is too slippery, and that's what caused the initial fall. Plaintiff's hand slipped, and she had nothing to grab, causing her to fall (EXHIBIT F).

21. On August 14, 2024, a maintenance request for the bathroom showed up in the tenant portal as "Open" to "In Progress (EXHIBIT J)," but still no safety/grab bars were installed.

22. On Tuesday, September 3, 2024, Plaintiff received a phone call from Defendant's Attorney's office stating that the apartment complex, Somerset Park, would be contacting her to schedule an appointment to install some safety bars in my bathroom. The Attorney stated that she sent a message to Somerset Park to get a contractor to get the modification started, still no action.

23. On Tuesday, September 17, 2024, Plaintiff wrote a follow-up email to Defendant's Attorney writing to follow up about September 3, 2024, phone call and seeking an update on the status of the installation of the safety/grab bars (EXHIBIT K).

24. Due to having to wash up at the sink, Plaintiff has not washed her butt and feet with soap and water since moving in, over a year now because she couldn't wash her butt while sitting on it and had no grab bars to use to stand and stabilize to wash up. The plaintiff's son cleans her butt and feet with Assurance Premium Washcloths.

25. On Monday, September 23, 2024, Defendant phoned Plaintiff to inform her that a contractor would be arriving sometime that day to discuss where safety bars are

needed and determine what must be done to install them including what types of bars. The contractor and maintenance staff did show up around 12:15 pm to assess what was needed to install the safety bars and did a video chat with the Plaintiff as she was at dialysis.

## HUD ADMINISTRATIVE PROCESS

26. Plaintiff filed a timely complaint with HUD on Tuesday, September 24, 2024.

## CAUSE OF ACTION

27. Plaintiff realleges and incorporates by reference herein the allegations described above.

28. By the conduct described in the foregoing paragraphs, the Defendant has:

   a. Discriminated in the terms, conditions, or privileges of the rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of disability, in violation of 42 U.S.C. § 3604(f)(2)(B);

   b. Refused to permit an individual with a disability, even at her own expense, to make reasonable modifications to existing premises, when such modifications may be necessary to afford that person full enjoyment of the premises, in violation of 42 U.S.C. § 3604(f)(3)(A); and

   c. Refused to make reasonable accommodations, at their expense, when such accommodations may be necessary to afford an individual with a disability an equal opportunity to use and enjoy a dwelling, in violation of 42 U.S.C. § 3604(f)(3)(B).

29. Plaintiff is an "aggrieved person" within the meaning of 42 U.S.C. § 3602(i), and has suffered injuries due to Defendant's discriminatory conduct.

30. Defendant's actions as described above were intentional, willful, and taken in disregard for the rights of Plaintiff.

## PRAYER FOR RELIEF

31. WHEREFORE, Plaintiff's request for accommodation are not only reasonable, but required by law, and as Defendant assured Plaintiff that the accommodation request would be fulfilled, but failed to fulfill the request which lead to Plaintiff's permanent injury, Plaintiff, Carol Walton, respectfully requests that this Honorable Court approves Plaintiff's request seeking damages/punitive damages and a claim for relief for court costs, violation of ADA reasonable accommodation/modification as stated in the Federal Law of the Fair Housing Act, physical, emotional and mental distress, humiliation due to having to wash up at the sink and not being able to wash butt and feet with soap and water since move in, over a year now because she couldn't wash her butt while sitting on it and had no grab bars to use to stand and stabilize to wash up, permanent physical pelvic and left leg damage, and permanent pain and suffering in the amount of $5,000,000. Plaintiff also requests that all rent monies be reimbursed from October 1, 2023, to the present, and that any rent owed moving forward be placed in escrow and forfeited by Defendant each month safety/grab bars are not installed in the shower, or near the toilet in Plaintiff's unit. Plaintiff requests that Defendant be ordered to immediately install safety/grab bars in Plaintiff's shower and commode area at their expense and that Defendant and all its employees be properly educated and trained regarding the Fair Housing Act's rules and regulations.

32. Plaintiff reserves the right to amend its affirmative defenses as the court rules permit, or as justice requires.

Respectfully submitted,

By: *Carol Walton*

Carol Walton in pro se
14705 Abbey Lane, Apt. A1
Bath, MI 48808
(517) 449-4587

Dated: October 1, 2024